Vanarsdall et al. *v.* The State, ex rel. Watson, Auditor.

Promissory Note and Mortgage.—*Parties.*—*Relator.*—*County Commissioners.*—*County Auditor.*—An action may properly be brought in the name of either the proper board of county commissioners, or of the State on the relation of the proper county auditor, for the foreclosure of a mortgage on real estate, executed to the board of commissioners and their successors, for the use of the county, to secure the payment of a promissory note executed to the county treasurer, for the use of the county.

Same.—*Power of to Execute, Take or Assign.*—*Ultra Vires.*—The board of commissioners of a county has the right to either execute, receive or assign a promissory note and mortgage necessary to the transaction of its legitimate business.

Same.—*Note and Mortgage Illegally Assigned.*—*Payment to Assignee.*—*Common School Fund.*—A *bona fide* payment upon such note and mortgage, made to an endorsee by the debtor, without notice that the endorsee's title is invalid, or that such note and mortgage belong to the school fund, is valid against the county.

From the Montgomery Circuit Court.

*P. S. Kennedy, W. T. Brush* and *E. C. Snyder,* for appellants.

*G. D. Hurley, B. Crane, S. C. Willson* and *L. B. Willson,* for appellee.

Perkins, J.—Suit by the appellee against James A. Vanarsdall, Frances A. Vanarsdall, George Vanarsdall, George

S. Davis, John A. Watkins, John Lee and Hugh Mc-Cormack, for the foreclosure of the following mortgage, viz.:

"This indenture witnesseth, that James A. Vanarsdall, of Montgomery county in the State of Indiana, mortgages and warrants to the commissioners of Montgomery county, Indiana, and their successors in office, for the use of Montgomery county in the State of Indiana, the following real estate in Montgomery county, in the State of Indiana, to wit, lots number (16) sixteen and (17) seventeen, in block 23, Canby's Addition to Crawfordsville, to secure the payment of the following promissory note:

"$500. One year after date, I promise to pay to the treasurer of Montgomery county, in the State of Indiana, for the use of said county, the sum of five hundred dollars, for value received, with interest from date, and without any relief from valuation or appraisement laws, this 24th day of June, 1867. JAMES A. VANARSDALL.

"And the mortgagor expressly agrees to pay the sum of money above secured, without any relief from valuation laws.

"Witness my hand and seal this 24th day of June, 1867.
"JAMES A. VANARSDALL. [SEAL.]"

The mortgage was duly acknowledged, stamped, etc.

Persons supposed to have after-acquired interests in the land were made parties.

James and Frances A. and George Vanarsdall demurred to the complaint for want of facts, which demurrer was overruled, and exceptions entered.

McCormack filed a disclaimer, Davis made default, Lee answered, but his answer is not in the transcript, and Watkins was not found.

George and Frances A. Vanarsdall severally answered payment to the assignees and holders of the note and

mortgage, viz., a part of said note and mortgage to Ben. E. Smith, and the remainder to Samuel C. Willson.

A demurrer was overruled to the answer, and the plaintiff replied :

1.   The general denial; and,

2.   As follows :

" That the note and mortgage, mentioned in the complaint, were executed by said James A. Vanarsdall, to secure the loan of five hundred dollars, from the surplus revenue of said county ; that afterward the board of commissioners of the county of Montgomery, Indiana, for the purpose of aiding in the construction of the Indianapolis, Crawfordsville and Danville Railroad, from Crawfordsville to Indianapolis, donated notes and mortgages to the amount of $65,895.59, belonging to said county of Montgomery, among which notes and mortgages were the note and mortgage mentioned in the complaint herein ; that said notes and mortgages were placed in the hands of Maj. Isaac C. Elston, Sr., to be by him delivered to the company, upon the performance, by said company, of certain conditions ; a copy of the said order of the said board of commissioners donating said notes and mortgages is filed herewith and made a part hereof, marked ' Exhibit A ; ' that afterward Maj. Isaac C. Elston, Sr., delivered said note and mortgage to said railroad company, which said company, by her president, Samuel C. Willson, transferred by delivery said note and mortgage to B. E. Smith and associates ; that afterward said B. E. Smith and associates indorsed in blank and delivered said note and mortgage to one Samuel C. Willson ; and plaintiff says, the said order of the board was and is without any authority of law and void, and that the several transfers and assignments of said note and mortgage were also without any authority of law, and null and void, and conferred no title whatever upon the holders thereof."

The restrictions in the order were upon the paying out of the money, only in proportion to the progress of the work upon the said road.

A demurrer to this paragraph of reply was overruled, the defendant excepted, and refused to reply further; whereupon final judgment was rendered for the plaintiff, for the amount of the note and mortgage and interest.

The Vanarsdalls assign for errors:

1. The court erred in overruling the demurrer to the complaint;

2. In overruling the demurrer to the second paragraph of reply.

The appellee assigns, as a cross error, the overruling of the demurrer to the answer.

The two principal questions to be decided in this case are:

1. Is the suit maintainable in the name of the State, on the relation of the county auditor?

2. Are the defendants entitled to be credited with the payments made to the possessors of the note and mortgage?

As to the first question, section 12 of the act in reference to county auditors is as follows:

" County auditors are authorized to institute suit and prosecute the same to final judgment and execution, in the name of the State, against principals or sureties, or either, upon any note, bond, mortgage, or any obligation, on account of any trust fund, or other fund, whether such note, bond, or mortgage, be in the name of the State or any other person." 1 R. S. 1876, p. 155.

This would seem to authorize the suit as instituted. *Rogers* v. *Gibson*, 15 Ind. 218. The suit might, without doubt, also have been brought in the name of the Board of Commissioners of Montgomery County. *The Board, etc.*, v. *McIlvain*, 24 Ind. 382.

As to the second question : It has already been decided by this court that the county had no power to make this donation. *Harney* v. *The Indianapolis, etc., Railroad Co.,* 32 Ind. 244.

This we may concede as a fact; but another and different question is now presented. The question now to be decided is, were the payments, *bona fide,* made by the debtor, on paper so donated, to the wrongful holders of the paper, valid ?

In Byles on Bills, sixth edition, p. 343, the law on this subject is stated generally as follows :

" There are some cases in which payment to a wrongful holder is protected, and others in which it is not. If a bill or note, payable to bearer, either originally made so, or become so by an endorsement in blank, be lost or stolen, we have seen that a *bona fide* holder may compel payment. Not only is the payment to a *bona fide* holder protected, but payment to the thief or finder himself will discharge the maker or acceptor, provided such payment were not made with knowledge or suspicion of the infirmity of the holder's title, or under circumstances which might reasonably awaken the suspicions of a prudent man. 'For it is a general rule, that where one of two innocent persons must suffer from the acts of a third, he who has enabled such third person to occasion the loss must sustain it.' And supposing the equity of the loser and payer precisely equal, there is no reason why the law should interpose to shift the injury from one innocent man upon another. But, if such a payment be made under suspicious circumstances, or without reasonable caution, or out of the usual course of business, it will not as between all parties and for all purposes discharge the payer."

The question on which the decision of this case must depend is thus shown to be this : Did the payer, when he paid to the holder the note and mortgage in this suit, know,

or have reason to suppose, that the holder had no right to receive such payment?

The record, it will be observed, discloses nothing of the facts and circumstances under which the payments were made. It shows, simply, that the note and mortgage were paid, a part to Smith, then the holder, and the balance to Willson, at the time the holder. It does not appear, as matter of fact, that the payer at the time of payment knew any thing as to the manner in which, or the purpose for which, the note and mortgage were placed in the hands of said holder.

The mortgage does not show that it was given to secure a loan from the surplus revenue fund, nor does the record disclose that the mortgagor had knowledge of the fact, if such were the fact. The mortgage was overdue when paid. Was the payer bound to know, as matter of law, that the transfer of the note and mortgage was *ultra vires?*

A municipal corporation has the power to receive, as payee, a note and mortgage for a debt lawfully due to such corporation. And it has the right to execute a note and mortgage for a debt lawfully due from such corporation. And it follows logically, that, if the corporation could execute its own note and mortgage to secure a debt, it could assign the note and mortgage of another that it might possess, instead of executing its own.

In short, a municipal corporation may receive, as a creditor, a note and mortgage, may give, as a debtor, a note and mortgage, or may assign those of a third person. *The Board of Commissioners, etc.*, v. *Day*, 19 Ind. 450 ; *Sturgeon* v. *The Board of Commissioners of Daviess Co., post,* p. 302, and cases cited. Parsons (1 Notes and Bills, 164,) says :

" Whenever a corporation is authorized to contract a debt, it may draw a bill or give a note in payment of it. Every corporation, therefore, may become a party to bills and notes for some purposes. Thus, a mere religious cor-

poration may need fuel for its rooms, and as an economical measure may buy a cargo of coal, and give its note for it; and such a note would undoubtedly be valid in this country. So also a bill or note given by a corporation will be presumed to have been given in the course of its legitimate business, until the contrary appears. And a note given by a corporation will, it seems, be valid in the hands of a subsequent indorsee, without notice, whatever may be the purpose for which it was given; and we think it would be valid in the hands of the payee, unless the transaction was clearly fraudulent, and the payee, either from actual knowledge or the nature of the transaction, had notice of it. If, for example, the trustees of Columbia College in New York bought a cargo of cotton, and gave their negotiable note for twenty thousand dollars, the seller might suppose that they had need of some means of transmitting a large amount of money, and found that they could do it to most advantage by ·using this cotton; or that they wanted it for some other legitimate purpose. Such a note would clearly be valid in the hands of a *bona fide* holder without notice; nor do we think that the· nature of the transaction merely would be notice to the original payee that it was given for an unauthorized purpose."

Such being the law, it is very clear, upon the facts of this case, that the maker of the note and mortgage had a right to pay said note and mortgage to the holder or holders, as he did. It does not appear from the record, that the maker knew that Smith or Willson held the note and mortgage otherwise than in their individual capacity, nor that they were executed to secure a loan from any particular fund.

Here we might stop. We have presented the case just as the facts in the record make it, and upon which it must be decided. But, as the case may probably be tried again, when further facts may be disclosed, we submit an author-

ity and an observation upon other points we are not now called upon to decide.

In *Moss* v. *Rossie Lead Mining Co.,* 5 Hill, 137, it was held, that, if an incorporated company purchase property and convert it to their own use, they will not be permitted to defeat a recovery for the price, by showing that the purchase, on account of the nature of some of the property, was probably, though not necessarily, an abuse of the powers granted by their charter; otherwise, if the vendor was apprised at the time of the sale, that the company were acting in violation of their charter." 1 Parsons Notes & Bills,165, note.

Could the appellee in this case, the plaintiff below, set up her own illegal act, if it were such, of which the appellants are not shown to have had any knowledge, to avoid the payment of the note and mortgage to the holders thereof, with whom the plaintiff had left them for the purpose of receiving payment ?

Again : Suppose it should turn out, upon another trial, that the loan, for which the note and mortgage were given, was made from the surplus revenue fund, still the money may be regarded as the money of the county, donated, it is true, to a particular purpose. That portion of the school fund denominated the surplus revenue originated in a deposit made nearly half a century ago by the United States, with the State, of her proportionate share of the surplus revenue, then in the treasury of the United States, growing out of the enormous sales, at that period, of the public lands. Though nominally a deposit, it was, at the time, generally regarded as a gift, and practically it was. Its return has never been demanded, and never will be. No greater financial exigency, necessitating its recall, than has occurred, will occur. The State, by her constitution, has permanently incorporated it with her school fund, distributed it among the counties, and, by section 6 of the 8th article of that instrument, has ordained, that,—

" The several counties shall be held liable for the preservation of so much of the said fund as may be intrusted to them, and for the payment of the annual interest thereon." *Baker* v. *The Board, etc., of Washington Co.*, 53 Ind. 497 ; *Driskill* v. *The Board, etc., of Washington Co.*, 53 Ind. 532 ; *Rock* v. *Stinger*, 36 Ind. 346.

The judgment is reversed, with costs, and the cause remanded for further proceedings, in accordance with this opinion.