THE WINCHESTER ELECTRIC LIGHT CO. ET AL.
*v.* VEAL.

[No. 17,508. Filed Sept. 19, 1895. Rehearing denied June 19, 1896.]

OFFICER.—*County Treasurer.—Loaning County Funds.*—A county treasurer, who loans the county funds, in violation of section 3019, Burns' R. S. 1894 (section 1942, R. S. 1881), cannot maintain an action for the recovery of the same ; although the county itself might maintain such action.

PUBLIC POLICY.—*Officer.—Loaning Public Funds.*—Where public funds are loaned by an officer, in violation of the statute, an action to recover the same cannot be maintained on the ground of public policy, when it does not appear, from the pleadings, that other interests than those of the parties to the contract are concerned.

REHEARING.—*Attorneys' Fees Part of Judgment.*—Where, pending the decision of the Supreme Court, the appellee assigns his judgment in the lower court, retaining an interest to the extent of his attorneys' fees, his petition for a rehearing will not be dismissed.

From the Randolph Circuit Court. *Reversed.*

*J. W. Thompson*, for appellants.

*E. L. Watson*, and *Cheney, Macy & Goodrich*, for appellee.

HOWARD, C. J.—This was an action brought by the appellee upon two mortgage notes, executed by the appellant electric light company, as principal, and by the remaining appellants, directors of said company, as sureties.

Demurrers were sustained to several special paragraphs of answer to the complaint; and these rulings present the only question for our consideration.

Substantially the same state of facts is averred in each of the special paragraphs of answer, namely: that at the time the loan was made the appellee was county treasurer of Randolph county, and the money for which the notes were given was taken from the funds of the county treasury, and was illegally, by appellee as such treasurer, loaned to the appellant company, in violation of the penal statutes of the State, and hence cannot be recovered by him in this action.

The particular statute claimed to have been violated, section 2019, Burns' R. S. 1894 (1942, R. S. 1881), is as follows:

"Whoever being charged, or in any manner intrusted, with the collection, receipt, safe-keeping, transfer, or disbursement of any money, funds, securities, bonds, choses in action, or other property belonging to or under the control of the State or of any State officer, or belonging to or under the control of any county, civil or school township, city or town in this State, converts to his own use, or to the use of any other person or persons, corporation or corporations, in any manner whatever, contrary to law; or uses, by way of investment in any kind of property; or loans, either with or without interest; or deposits with any person or persons, corporation or corporations, contrary to law; or exchanges for other funds, except as allowed by law, any portion of such money, funds, securities, bonds, choses in action, or other property—is

guilty of embezzlement, and upon conviction thereof, shall be imprisoned in the State prison not more than twenty-one years nor less than two years, fined not exceeding double the value of the money or other property embezzled, and disfranchised, and rendered incapable of holding any office of trust or profit for any determinate period."

It seems clear that, under this statute, the appellee, in loaning the money in his hands as county treasurer, was guilty of a felony.

It is hence argued that, having thus engaged in the commission of an act made criminal by the law of the State, the appellee is not in position to invoke the same law to aid him in the recovery of the money loaned; that by assisting him to make good his loan, the law would, in effect, be but abetting him in his wrongdoing. In other words, that the law cannot help the criminal to reap the fruits of his crime, but must leave him where it finds him; and the county can look only to the treasurer personally, and to his bondsmen, to make good any loss that may be occasioned to the treasury by the failure to recover the money so illegally loaned.

It is admitted that the plea here made by the borrower is not one of honor, but rather of bare legal right. "We accept and adopt," say counsel for appellants, "the language of Judge Worden, in *Rock* v. *Stinger*, 36 Ind. 346, where he says: 'We may remark, however, that the defense has nothing in it to commend itself to favorable consideration; but, notwithstanding this, it should prevail if the rigid law is with the defendants.'"

Counsel also quote from *Holman* v. *Johnson*, Cowp. 343, where it was said by Lord Mansfield: "The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very

ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. * * * No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground that the court goes; .not for the sake of the defendant, but because they will not lend their aid to such a plaintiff."

It is said, by counsel for appellee, that the ruling of the trial court in the case before us, was based upon the theory that the legal title to the money loaned was in the treasurer, and that consequently he had the right to loan and collect the same; and that in making such ruling the court below was but following the decisions of this court.

Counsel for appellants contends that these decisions were made before the enactment, in 1881, of the penal statute above set out, and that this court has not since that date held that the treasurer can loan the money in his hands, although it has held that the legal title to the money is still in the treasurer. *Harvey* v. *State, ex rel.,* 94 Ind. 159; *Rogers* v. *State, ex rel.,* 99 Ind. 218; *Rowley, Admr.,* v. *Fair,* 104 Ind. 189.

It is to be noted, however, that these and other like decisions, though made since the enactment of the criminal statute in question, were not made with reference to that statute. Not until now, so far as we have been able to learn, has that statute been brought here for consideration; and now, for the first time, it becomes necessary to decide whether a contract made

in violation of the statute is valid and enforceable between the parties.

Moreover, even as to the treasurer's title to the money loaned, the holding in the case of *Rowley v. Fair, supra,* is to the effect that such title is rather technical than substantial, and is acknowledged only for the better security of the funds, and not for the use or benefit of the officer himself.

In that case, the court, speaking by Judge Niblack, said:

"But the title of a township trustee in the money for which he is held accountable is only recognized to the extent that is necessary for the better preservation of the various funds which the money represents, and is, in fact, a legal title only in a technical and very limited sense. The equitable title to, and the beneficiary interest in such money is in the township, and in that view the money for which the trustee is liable upon his bond really belongs to the township."

It was accordingly held, in that case, that notes and other evidences of indebtedness which had been taken by a deceased township trustee for township moneys loaned by him were rightfully turned over to his successor in office, and did not belong to his administrator. See also *State, ex rel., v. Wilson,* 113 Ind. 501.

As to the suggestion, in that case, that such loaning of the township funds by the trustee was embezzlement, the court expressly refused to make any decision, saying that: "is a question not now, in any manner, before us, and concerning which we are not now called upon either to intimate or to decide anything."

In the case now under consideration, the appellee having violated an express statute in loaning the money in his hands as county treasurer, and the question being before us for decision, the holding must be that he can maintain no action based upon his own

illegal act. This has been the invariable decision of all courts.

"There is, to my mind," said Chancellor Kent, in *Griswold* v. *Waddington,* 16 Johns. 438 (at p. 486), "something monstrous in the proposition, that a court of law ought to carry into effect a contract founded upon a breach of law. It is encouraging disobedience, and giving to disloyalty its unhallowed fruits. There is no such mischievous doctrine to be deduced from the books."

See further, *Madison Ins. Co.* v. *Forsythe,* 2 Ind. 483; *Siter* v. *Sheets,* 7 Ind. 132; *Daniels* v. *Barney,* 22 Ind. 207; *State, ex rel.,* v. *Sims,* 76 Ind. 328; *Case* v. *Johnson,* 91 Ind. 477; *Louisville, etc., R. W. Co.* v. *Buck, Admr.,* 116 Ind. 566; *Leonard* v. *Poole,* 114 N. Y. 371; *Bowman* v. *Phillips,* 13 Am. St. Rep. 292; 1 Parsons Contracts, 458; Broom's Legal Maxims, 738.

But counsel for appellee finally contend that in cases such as that before us, public policy requires that, notwithstanding the violation of the statute, the contract, based upon such violation, should nevertheless not be declared void. Many authorities, also, including cases in this and other courts, are cited in support of such contention, among them, 1 Story Eq. Juris., sections 298, 300; 1 Pom. Eq. Juris., section 403, and notes; *Lester* v. *Howard Bank,* 3 Am. Rep. 211; *Deming* v. *State, ex rel.,* 23 Ind. 416; *Scotten* v. *State, ex rel.,* 51 Ind. 52; *State, ex rel.,* v. *Levi et ux.,* 99 Ind. 77.

In these cases, however, other interests than those of the parties to the contracts were concerned; and it was to protect such other interests, and not for the benefit of those who had violated the law, that the contracts were enforced.

In *Lester* v. *Howard Bank, supra,* a Maryland case chiefly relied upon by counsel, the president of the bank had borrowed from its funds, contrary to statute.

Recovery under the contract was enforced, not to shield the officials who had violated the law, but for the protection of the stockholders, depositors and other creditors of the bank.

In the Indiana cases cited, county auditors, in making loans from the school fund, had violated provisions of the statute. Public policy required that these contracts should be enforced, not in favor of the auditors, but for the protection of the school fund. It would have defeated the very purpose of the law to have done otherwise.

These cases are not analogous to the case at bar. Here the action was not brought in the name of the county, nor did the appellee pretend to sue in his capacity as county treasurer, even if such suit by him could in any case be maintained. Section 7820, R. S. 1894 (section 5735, R. S. 1881); *Vanarsdall* v. *State, ex rel.*, 65 Ind. 176; *Caldwell* v. *Board, etc.*, 80 Ind. 99. Neither is there anything in the record from which it can be known that the county was pursuing the funds belonging to its treasury or seeking to recover them from the appellants. No public interest in the result of this action is therefore shown, nor any reason why public policy would be served by a recovery on the contract sued on, in favor of the appellee.

We have no doubt that if the county were shown to be interested in the recovery of the money here sued for, it might, by the proper officers, have been admitted as a party plaintiff in the original action. In such case much of what is said by counsel, as also the authorities cited, would be in point to show that, on grounds of public policy, a recovery ought to be had on the debt sued on in favor of the county. The faults, or even crimes, of public officials ought not to be allowed to interfere with the right of the people, through their several municipal and political organ-

izations, to recover the moneys raised from them by taxation, and wrongfully converted or misapplied by such officials. In whosesoever custody the money of the county is found it may be reached for the benefit of the county. *Vigo Tp.* v. *Board, etc.,* 111 Ind. 170, 178.

The judgment is reversed, with instructions to overrule the demurrers to the special paragraphs of answer, and with leave, if desired, to amend the complaint or to file a new complaint, and to admit other parties plaintiff.

MONKS, J., did not particpate in this decision.

### ON PETITION FOR REHEARING.

HOWARD, J.—Appellee, having filed a petition for rehearing, we are first met with the motion of appellants to dismiss the petition for the reason, as claimed, that before the filing of the same, the appellee had ceased to have any interest in the judgment appealed from, having received large payments thereon, and having assigned and transferred, without recourse, the unpaid part thereof. A reference, however, to the certified transcript of payments made and of the assignment of the judgment shows that the appellee still retains some interest in the judgment, at least to the extent of his attorney's fees. The motion to dismiss must therefore be overruled.

The appellee has filed elaborate and earnest briefs in support of his petition for a rehearing of the appeal; but we are satisfied that no sufficient reason is shown why the conclusion heretofore reached by the court should be disturbed.

A good part of the principal brief is occupied with a discussion of the proper punctuation of the penal statute violated in this case. (Section 2019, R. S. 1894, section 1942, R. S. 1881.) Were we disposed to follow

counsel in this matter, we might observe that the history of the enactment of the statute militates against the argument here made. Three of the most eminent legal minds of the State, Judge Frazer, Senator Turpie and Mr. Stotsenburg, on appointment of this court and in pursuance of the provisions of the statutes, were charged with the compiling and publishing of the revised codes of 1881, including the section in question. (Acts 1879, 192, Acts 1881, 605.) If those accomplished jurists were of opinion that any doubt rested on the interpretation to be given to the clauses relating to the loaning and to the depositing of public money, they resolved such doubt in favor of the interpretation which we have given; and by inserting a semi-colon instead of a comma between the clauses, showed that they understood that the phrase "contrary to law" applies to "deposits," and not to "loans;" that loans are prohibited absolutely, and deposits only when made contrary to law.

We can, however, see but little that is controlling in this matter of punctuation. If there were neither comma nor semi-colon between the clauses, the interpretation, as we think, could not be different. Taking the words as they stand in the original act and section (section 41 of the act concerning public offenses and their punishment, Acts 1881, 182), and we find it declared that whoever, whether State, county, or other public official, being charged with the collection, custody and disbursement of public funds, "converts to his own use, or to the use of any other person or persons, corporation or corporations in any manner whatever, contrary to law, or uses by way of investment in any kind of property, or loans either with or without interest, or deposits with any person or persons, corporation or corporations, contrary to law, or exchanges for other funds, except as allowed by

law, any portion of such money," shall be guilty of embezzlement, etc. "Contrary to law," or an equivalent phrase, is here used three times; and in each case clearly, as we think, qualifies the clause with which it stands in immediate connection. See, as bearing on this matter of construction, *Am. Trust and Savings Bank* v. *The Gueder, etc., Mfg. Co.,* 150 Ill. 336, 342.

Refinements of punctuation are not needed here. Provided there be ordinary intelligence, it would seem that the language is so clear that he who runs may read and understand: An officer may not use the public funds by way of investment in any kind of property or business; neither may he loan such funds, either with or without interest; but such official is required to keep the public moneys in a safe place, ready to be paid over to the proper person whenever demanded; he may, therefore, provided he is not forbidden by law, deposit such money in a bank, subject to his check. A bank is usually a safe place to keep funds. It is true, that some risk is taken in making such deposits. The bank may fail, and the money be lost. The public official who deposits money in a bank must take that hazard; if the money is lost he shall make it good. But so long as there is no law against making such deposits he may exercise his judgment as to making them; and the making of such deposits will not subject him to the charge of embezzling the public funds in his charge. *Meridian Nat. Bank* v. *Hauser, ante* 496. The deposits, however, must be subject to check. Loans to a bank, whether as time deposits or on certificates, or secured by bank paper, or otherwise, are as obnoxious to the statute as like loans made to an individual or other corporation,

But, in any case, the argument of counsel would not be good. Even if the statute did forbid officials

to deposit the public moneys in bank, still we should not for that reason be at liberty to overthrow the statute; but, on the contrary, must uphold it. Any action which the legislature in its wisdom may see fit to take for the preservation of the public funds must be sustained by the courts. As a matter of fact, there is one public official who is not allowed to deposit in a bank the funds in his custody. By section 7657, Burns' R. S. 1894 (section 5633, R. S. 1881), it is provided that "the Treasurer of State shall be required to use the treasury. * * * as the sole place for the deposit and safe-keeping of the moneys of the State, except as hereinafter provided." As to county treasurers, however, no such limitation has, as yet, been imposed; and they may undoubtedly deposit the money in their custody in bank, subject to check, if they deem best, and at their own risk, so long as the legislature enacts no law against it; but they cannot loan the money, either with or without interest, nor invest it in any kind of property. It is public money, the title being in the official only to the extent that he is required to account for it; and he is not authorized to use it for his own private gain.

While, therefore, the legislature might undoubtedly do as it has done in the case of the Treasurer of State, and forbid county treasurers, township trustees, and others, to deposit the public moneys in banks; yet, so far, it has not seen fit to do so. That body has undoubtedly considered that, in many cases, the banks are safer places of deposit than the vaults of the county treasurers; and has not, therefore, in any manner forbidden such deposits. Appellee, however, has little reason to discuss the statute from this point of view. He is not charged with depositing public moneys in banks, but with loaning the money for his own private gain. This he certainly cannot do.

Nor was it simply to secure the public funds from loss that this statute was enacted. The official bonds required by law are presumed to be sufficient security for the money, in case of loss or misappropriation by the officers (but see Murfree Official Bonds, sections 649, 650); while the statutes against embezzlement are deemed to be ample to punish the crime, but, as said by the Supreme Court of Colorado, *In re Breene,* 14 Colo. 401, the purpose of the statute before us is wider and deeper than all that. It looks rather to the inauguration of a more healthful public policy. Private speculation in public funds by the official custodians thereof, is emphatically against good morals. "Its inevitable tendency is to corrupt political and official action, and degrade the public service."

The court will also, in the interpretation of this statute, take notice of sad chapters in the history of public officials who have been tempted to use the funds in their hands to enrich themselves or their friends, and have thus brought ignominy upon all concerned, ending often in state's prison, sometimes, too, in a death of shame. And although such exposure and disgrace might be avoided, and the money be forthcoming when called for, and that without impairment of the official's estate, leaving him, perhaps, even some ill-gotten gains; yet the tone of moral character in the community, having knowledge of such speculation in the public treasury, must inevitably be lowered, and the purity of official integrity clouded. Good citizenship, a clean administration of public affairs, the welfare of the official himself no less than the good of the public, all required of the legislature the enactment of this law.

The clauses of the statute, therefore, which were uppermost in the mind of the legislature, were those relating to private speculation in the public funds.

The remaining clauses were no doubt inserted with a view of making the statute general in character, and to harmonize its provisions with those of other statutes relating to the subjects named. The essence of the law is, and the main purpose in passing it unquestionably was, to declare guilty of embezzlement any treasurer, trustee, or other custodian of public funds, who "uses" such funds "by way of investment in any kind of property," or who "loans" them, "either with or without interest."

What is said by counsel as to the right of the county to interplead and pursue the funds wherever found, while somewhat inconsistent, from appellee's point of view, has nevertheless been sufficiently considered in the original opinion. The right of the county to recover its funds is clear.

The petition is overruled.

McCABE, J. dissents.