COLLINS *v.* CENTLIVRE BREWING COMPANY ET AL.

[No. 10,192.    Filed January 30, 1920.    Rehearing denied June 25, 1920.]

1. LANDLORD AND TENANT.—*Lease Requiring Sale of Landlord's Beer.—Validity.—Public Policy.—Statute.*—A lease by a brewery company to a saloon keeper which stipulated that the saloon keeper must sell the company's beer excusively is void, as being contrary to public policy and in violation of §§8323f, 8323z Burns 1914, Acts 1911 p. 244, relating to the issuance of retail liquor licenses.   p. 576.

2. EXEMPTIONS.—*Householder's Exemption.—Property Subject to.—Proceeds of Sale of License Purchased for Saloon Keeper by His Receiver.*—Where a receiver was appointed for a saloon keeper, who had applied for, and had been granted, a renewal of his retail liquor license, and had arranged for money with which to pay the license fee, the license when issued belonged to him, even though the receiver paid for it and the proceeds of the sale of the license by the receiver for the purpose of paying the license fees, entitling the saloon keeper to his statutory exemption as a resident householder out of such fund.   p. 577.

From Porter Circuit Court; *H. H. Loring,* Judge.

Action by the C. L. Centlivre Brewing Company against James C. Collins, in which the Booster Cigar Company intervened and defendant filed a cross-complaint.   From the judgment rendered, the defendant appeals.   *Reversed in part and affirmed in part.*

*Fred C. Crumpacker* and *Edwin H. Freidrick,* for appellant.

*John M. Fox, John H. Gillett* and *Leonard, Rose & Zollars,* for appellees.

Statement by DAUSMAN, J.—The C. L. Centlivre Brewing Company instituted this action in the Lake Circuit Court against James C. Collins.   The following are the material averments of the first paragraph of complaint:   "That the defendant has been conducting a business as a licensed saloon keeper since the 31st

day of July, 1914, on the premises known as No. 187 State Street in the City of Hammond; that the defendant has occupied said premises ever since said date at an agreed rental of $120 per month and is now indebted to the plaintiff on account of said rent in the sum of $1,368; and that said sum is now due and wholly unpaid.

"That the defendant is indebted, as plaintiff is informed and believes, to other persons in the sum of $340; that he is not the owner of the bar fixtures in said place of business; that his stock wherewith he conducts said business does not exceed in value $50; that said fixtures were sold by plaintiff to defendant in 1910 on conditional sale, and defendant, being unable to pay for the fixtures, surrendered them to plaintiff about six months ago; that since the surrender of the fixtures to plaintiff they have simply remained in said place of business without any agreement or understanding whatsoever between the parties, until plaintiff could procure a purchaser therefor; and that the defendant has no other property in said place of business except a cash register, some glassware, and a few chairs and tables; that the defendant is a resident householder of Lake County and claims all the property herein alleged to belong to him as exempt from execution; and that the defendant is wholly insolvent and without property which could be reached on execution.

"That on July 6, 1915, the defendant was granted a renewal of his license by the Board of Commissioners of said County to continue said business on said premises, but he has not paid the license fees therefor; that he is without means wherewith to pay said license fees which must be paid to-day if the license is to be made available; that the license would constitute an asset of value over and above the amount required to be paid therefor; that the defendant's property above mentioned

would sell for more in connection with a going business than if said place were closed; that if said property could be disposed of in connection with a going business it is probable that something might thereby be realized for creditors, over and above his exemption; that the defendant has already completed his right to the license by the execution of the required bond and is desirous that the license issue, if the means can be provided for the payment of the license fees; that if the payment of the fees could be arranged for, the receiver could then immediately apply for a transfer of the license; and that the value of the license, whatever it may be, could thereby be made available as an asset of said business.

"That one George W. Lawless is willing to purchase said business provided he can have said license legally transferred to him, and upon that condition he is willing to advance the license fees of $406 and the premium of $20 for the surety on the bond which as yet remains unpaid, and is willing to bid against other bidders for the purchase of said business, without other right except that if he is not the successful bidder at the sale and the license should pass to some one else he may then have a preferred claim against the assets (aside from the exemption rights of the defendant in his said tangible personal property) to the extent of $426.

"Wherefore, plaintiff prays that it have judgment against the defendant in the sum owing it as above alleged; that a receiver be appointed to take charge of said business, with authority to apply for the transfer of said county and city licenses; and that an order be entered protecting the said Lawless in his advancement, if made, to the extent above indicated."

The second paragraph of complaint seeks only to recover the reasonable rental value of the real estate.

Collins appeared in person and consented to the ap-

pointment of a receiver, reserving his exemption rights. Thereupon one Patrick L. Fitzgerald was appointed receiver. The cause was then venued to the Porter Circuit Court on the application of the brewing company. Afterward Collins employed counsel and filed answer in four paragraphs, one of which went out on demurrer. Reply in denial.

Thereafter Collins filed a petition, denominated "cross-complaint," stating facts showing that he is entitled to an exemption as a resident householder, and asking that the receiver be ordered to allow and pay him the statutory amount of $600. The Booster Cigar Company filed a petition asking that the receiver be ordered to deliver to it certain cigars which it claimed to own and which the receiver had taken as the property of Collins. The receiver filed answer in denial to each petition. The two petitions and the action against Collins were tried together and without a jury. Judgment in favor of the brewing company on its complaint against Collins for $1,368, which was made a general claim against the assets in the hands of the receiver. Judgment on Collins' petition to the effect that the receiver shall pay on his exemption the net amount realized from the receiver's sale of the "tangible" property; but that Collins shall "take nothing out of the said assets produced by the sale of said licenses" and that Collins has no claim thereto. Judgment for the Booster Cigar Company on its petition. However, the three judgments run together as if constituting but a single judgment.

The "tangible" property was appraised at $453. One item of "tangible" property was a cash register, appraised at $200, but which was subject to a mortgage of $80. This item sold for $45, subject to the mortgage. All this "tangible" property was sold to Lawless for $178. Lawless also purchased the licenses for $1,030.

Louis A. Centlivre testified as follows: "I am President of the Centlivre Brewing Co. I have served in that capacity about 25 years. Mr. Rice is the General Manager. I have authority to speak for the Company and have full authority to make contracts. We rented out different places in Lake County because it is to our advantage to spread the sale of our beer, and by renting saloons we get customers. We don't rent saloons to anybody unless they handle our goods. Our intention is to require them to handle our goods. We have a wholesale license at Fort Wayne which covers the state. The building that Mr. Collins was in was fitted up before he went in; new furniture was put in. I took the lease on the property from Mr. Minas. The Centlivre Brewing Co. fitted it up for Collins. I think one of the clerks in the office drew up the lease at Mr. Rice's dictation. I signed it myself. On one of my trips to Hammond I was in Mr. Collins' place of business in the old building, and he told me he was tired of the old building and wanted to get out. I looked over the premises he wanted at that time. His desiring the place as a saloon caused me to look over it. We made our improvements there for the purpose of his occupancy. I rented the building for $100 and I sublet it to him for $120. That was, in a measure, to pay for the expenses. The expenses were $20 or $240 a year. Mr. Collins said it would be $300 to pay the improvements, and I did that to accommodate him. It wasn't fit for anything the way it was, and the improvements were necessary."

The lease contains the following provision:

"It is especially agreed that lessee shall, during the life of this lease, use exclusively in the premises leased the brand of beer and product of the lessor. This provision is made a condition of this lease, and this lease shall be forfeited on ten days' notice if this condition is not complied with."

Two questions are presented for our determination: (1) Is the lease illegal and void? (2) Is Collins entitled to the statutory exemption?

DAUSMAN, J., delivered the opinion of the court:

The first paragraph of complaint is unique, and the proceeding throughout is irregular. But, since no one is complaining of the procedure, that feature will be passed without comment.

Section 3 of the act of 1911, commonly known as the Proctor Law, provides that every applicant for a license, or a renewal thereof, to sell intoxicating liquors shall state in his application that he is the sole *bona fide* owner or lessee of the premises; that he is neither an agent nor employe of any one engaged in the manufacture or sale of any article which he intends to sell under his license; that he is the actual and sole owner of the business, and that no other person has any interest, directly or indirectly, therein; that the license or renewal is desired for the applicant's own use and benefit, and not for the use and benefit of any other person; and that he has not, directly or indirectly, solicited, received or accepted from any person, firm or corporation engaged in the manufacture or sale of intoxicating liquors, any gift, loan of moneys, furniture, fixtures, or other assistance of any kind. The application must be subscribed by the applicant and verified by his oath, and the statements therein must be proved at the hearing. §§8323f, 8323z Burns 1914, Acts 1911 p. 244.

Prior to the enactment of this statute it was a common practice throughout the state for brewers to start men in the saloon business by renting the buildings, equipping them with all necessary furniture and appliances, and supplying the necessary funds to procure licenses. That custom resulted in putting a large proportion of the saloons in the hands of irresponsible men

who were merely the agents and tools of the brewers. In the judgment of the legislature that practice was inimical to the public welfare and injurious to the state. To correct the evil the provisions of the statute above stated were inserted in the Proctor Law. The legislature intended thereby to put the saloons in the hands of responsible men who would be free from brewery control and domination.

The lease from the Centlivre Brewing Company to Collins must be considered in connection with all the facts and circumstances disclosed by the evidence. There is no controversy concerning the facts bearing on the relation these parties sustained to each other. The only dispute is concerning the legal effect of the facts. We are of the opinion that the brewing company's claim arises out of a contract which is illegal and void; for the reason that it violates a statute and is contrary to public policy. The most that can be done to support the contrary view is to argue that the lease is not a technical violation of the statute, and that the duty to keep free from the alliances and influences forbidden by the statute rested on the saloonkeeper and not on the brewer. But it is apparent that there could be no violation of the statute except by the co-operation of the parties. In the case at bar their mutual efforts resulted in the very evil that the statute was designed to prevent. In the face of the facts averred in the complaint and disclosed by the evidence, Collins could not have procured his license in 1914 without violating the law in more than one way. The brewing company actively participated in his unlawful conduct, and in fact inspired and promoted it. Every attempt to evade the law by subtle devices and cunning expedients is in truth a violation of the law. If the courts should lend the judicial power of the state to the enforcement of the claim which is the foundation of the

brewing company's action herein, the effect would be to condone perjury, encourage lawlessness, and defeat the effort of the legislature to promote the public welfare. See *Brown* v. *First Nat. Bank* (1894), 137 Ind. 655, 37 N. E. 158, 24 L. R. A. 206; *Winchester, etc., Light Co.* v. *Veal* (1896), 145 Ind. 506, 41 N. E. 334, 44 N. E. 353; 6 R. C. L. 699-713, also 814-834.

Is Collins entitled to his statutory exemption out of the fund in the hands of the receiver, regardless of the source from which the fund was derived? We 2. must answer that question in the affirmative. He applied for the license. He satisfied the board of commissioners that he was entitled to receive a license, and ultimately the license was issued to him for his sole use and benefit. The license when issued belonged to him. The fact that the receiver borrowed the money with which to pay the license fees did not make the license the property of the receiver. Moreover, the undisputed evidence shows that Collins had arranged for the money on his own account; that it was ready for him in ample time; and that he would have procured his license without the assistance of the receiver had it not been for the dominating control of the brewing company and its petulant anxiety to get the license into the hands of Lawless. Certainly the license did not belong to the brewing company. It follows that the receiver sold the license as the property of Collins, and that the money received therefor became part of the trust fund subject to a lien to the extent of the sum borrowed for the purpose of paying the license fees.

The judgment in favor of the Centlivre Brewing Company is reversed, and the trial court is directed to grant a new trial in the brewing company's action against Collins. The judgment denying Collins his full exemption is reversed, and the trial court is directed to allow

his exemption in full and to make an order directing the receiver to pay his exemption as a preferred claim. The judgment in favor of the Booster Cigar Company is not disturbed.