CLARK *v.* SOUTHERN RAILWAY COMPANY.

[No. 9,489. Filed May 16, 1918. Rehearing denied December 11, 1918. Petition to transfer withdrawn April 15, 1919.]

1. CARRIERS.—*Carriage of Passengers.—Free Passes.—Issuance to Employe's Family.*—Under §8563, subd. 5, U. S. Comp. St. 1916, declaring it to be unlawful to issue an interstate free pass except to employes and their families, an interstate carrier is impliedly

authorized to issue such a pass to the wife of one of its employes. p. 704.

2. CARRIERS.—*Passes Issued to Employe's Family.—Free Passes.—Federal Question.*—Whether a pass issued by an interstate carrier to a member of an employe's family is a free pass for gratuitous passage, and not issued in consideration for such employe's services, is a federal question. p. 705.

3. CARRIERS.—*Carriage of Passengers.—Free Passes.*—A pass issued by an interstate carrier under the terms of §8653, sub. 5, U. S. Comp. St. 1916, to a member of an employe's family is a free pass and a gratuity under the decisions of the United States Supreme Court. p. 705.

4. CARRIERS.—*Carriage of Passengers.—Free Passes.—Care Required.—Stipulations of Nonliability.—Validity.*—Where a carrier voluntarily undertakes to carry a passenger gratuitously or under a free pass, in the absence of a contract or stipulation to the contrary, it owes him a duty to exercise care for his safety, and a failure to discharge such duty may form the basis of an action for negligence, though it may, if there is no valid prohibiting statute, relieve itself from such liability. p. 705.

5. APPEAL.—*Scope of Review.—Issues Tried Below.*—In a passenger's action against a railroad company for injuries sustained while being transported under a free pass, where defendant, in its special answer setting up a release under a nonliability stipulation embodied in the pass, failed to allege that such stipulation was printed in type required by §3897 Burns 1914, §2904 R. S. 1881, and there was controversy in the briefs as to the burden of alleging the affirmative or the negative of that proposition, and a specific finding, which was unchallenged, was made to the effect that the conditions on the pass were printed in smaller type than stipulated by the statute, the court on appeal will regard as before it for review the question of the validity of such stipulation as affected by the terms of the statute. p. 707.

6. CARRIERS.—*Interstate.—Carriage of Passengers.—Filing Schedule of Fares.—Effect.*—The schedule of rates, fares and charges and the regulations filed with the Interstate Commerce Commission, as required by §8569 U. S. Comp. St. 1916, are binding on both carrier and shipper or passenger. p. 708.

7. CARRIERS.—*Interstate.—Schedule of Rates.—Failure to File.—Validity.—Statute.*—Any rule or regulation required by §8569 U. S. Comp. St. 1916, to be filed with the schedule, and which changes, affects, or determines the value of the service rendered to the passenger or shipper, is unlawful and void, if not so filed. p. 709.

Clark *v.* Southern R. Co.—69 Ind. App. 697.

8. CARRIERS.—*Interstate.—Schedule of Rates and Fares.—Filing.— Statute.—Scope.*—Section 8569 U. S. Comp. St. 1916, providing that every common carrier shall file schedules of rates, fares and charges with the Interstate Commerce Commission, does not require the filing of schedules concerning free passes authorized to be issued by §8563, subd. 5, as the act contemplates filing only where compensation is received by the carrier. pp. 709, 710.

9. CARRIERS.—*Interstate.—Interstate Commerce Act.—Rate.—Fare. Charge.*—As used in the Interstate Commerce Act, the word "rate" means the net cost of transportation to the shipper; "fare" means the rate of charge for the carriage of passengers; and a "charge" means the price fixed or demanded for services rendered. p. 710.

10. CARRIERS.—*Interstate.—Carriage of Passengers.—Free Pass.*—A free pass calls for gratuitous service voluntarily performed, and it evidences a mere privilege of transportation which a carrier cannot be compelled to grant. p. 710.

11. COMMERCE.—*Interstate Carriers.—Free Passes.—State and Federal Law.*—The issuance of free passes by interstate carriers is subject to regulation by state or federal law, and state legislation thereon is superseded by federal law only when it is specific and covers the subject-matter which the state law attempts to regulate. p. 713.

12. COMMERCE.—*Interstate Carriers.—Liabilities.—Statutes.—Carmack Amendment.—Scope.*—The provision of the Carmack Amendment to the Hepburn Act (34 Stat. at L. 584, ch. 3591), preserving remedies and rights of action under existing law has reference to rights and remedies under federal, rather than state, law. p. 720.

13. COMMERCE.—*Interstate Carriers.—Liabilities.—Statutes.—Carmack Amendment.—Scope.—Operation of State Laws.*—As the Carmack Amendment to the Hepburn Act (34 Stat. at L. 584, ch. 3591) deals only with the transportation of property, it did not suspend the operation of §3897 Burns 1914, §2904 R. S. 1881, relative to conditions limiting the carrier's liability, which are embodied in any pass, ticket, etc., nor §196 of the Constitution of Kentucky prohibiting common carriers from contracting for relief from their common-law liability. p. 720.

14. COMMERCE.—*Interstate Carriers.—Carriage of Passengers.— Liabilities.—Statutes.*—As the Hepburn Act (§8653, subd. 5, U. S. Comp. St. 1916), prohibiting the issuance of interstate free passes except to employes and members of their families, in no way regulates the liabilities of carriers of persons transported on free passes, such liabilities continue subject to state laws, since, where Congress legislates only on a certain element of a general subject,

state law dealing with other phases of the same subject and not inconsistent with federal legislation is not thereby suspended. p. 721.

15. TORTS.—*Injuries Sustained in Foreign State.—Law Applicable.*—When an action is brought in one jurisdiction to recover for a personal injury inflicted by a tortuous act committed in another jurisdiction, all matters relating to the right of action are governed by the law of the place where the act was committed and the injury suffered, and in any such case all defenses available under such law, if properly brought to the attention of the court, will likewise be recognized and enforced, unless against the policy of the law of the former. p. 725.

16. CARRIERS.—*Interstate.—Carriage of Passengers.—Free Passes.—Injuries to Passenger.—Liability.*—Where an interstate carrier operating in Indiana and Kentucky issued in the former state for transportation into the latter a free pass on which a stipulation against liability for injury was printed in smaller type than required by §3897 Burns 1914, §2904 R. S. 1881, and the passenger was negligently injured in Kentucky, she could recover under a complaint stating a cause of action at common law, since §196 of the Constitution of Kentucky prohibits common carriers from contracting for relief from their liability at common law, which requires the exercise of due care even when a passenger is carried gratuitously, and the stipulations against liability were void. p. 725.

17. EVIDENCE.—*Presumption.—Law in Foreign State.*—In the absence of allegation and proof to the contrary, it will be presumed that the common law prevails in Kentucky. p. 726.

18. COURTS.—*Comity.—Decisions Construing Laws of Other States.*—Where there is a decision of the Court of Appeals of Kentucky construing a provision of the Constitution of that state, the Appellate Court of Indiana, in deciding a case arising in Kentucky to which such provision is applicable, would, under the principle of comity, be required to follow it. pp. 726, 727.

19. CARRIERS.—*Interstate.—Carriage of Passengers.—Free Pass.—Conditions in Violation of Statute.—Validity.*—Where an interstate carrier operating in Kentucky and Indiana issued in the latter state a free pass for transportation into the former, with a stipulation against liability for injury printed in smaller type than required by §3897 Burns 1914, §2904 R. S. 1881, and the passenger was negligently injured while traveling in Kentucky, the stipulation against liability will not be enforced in Indiana against the passenger. pp. 728, 730, 733.

20. CONTRACTS.—*Contract Founded on Breach of Law.—Enforcibility.*—As a general rule, a court of law will not, as between the parties, carry into effect a contract founded on a breach of the law. p. 730.

21.  CARRIERS.—*Interstate.*—*Contracts for Continuous Interstate Carriage.*—*Law Governing.*—A contract for a continuous interstate carriage, to be partly performed in the state where the contract is executed, is regarded as entire and indivisible and governed by the law of the place where executed.  p. 732.

From Posey Circuit Court; *Herdis Clements,* Judge.

Action by Callie Clark against the Southern Railway Company.  From a judgment for defendant, the plaintiff appeals.  *Reversed.*

*Claude A. Smith* and *T. Morton McDonald,* for appellant.

*Embree & Embree, John D. Welman* and *Humphrey & Humphrey,* for appellee.

CALDWELL, J.—Appellant brought this action to recover damages on account of certain personal injuries suffered by her while traveling on one of appellee's passenger trains.  A trial resulted in a judgment in favor of appellee, rendered on conclusions of law stated on a special finding of the facts.

On this appeal appellant challenges the action of the trial court in overruling the demurrer filed to the second paragraph of answer, and challenges also each conclusion of law.

The complaint disclosed that appellee, as a common carrier of freight and passengers for hire, operated a railroad from East St. Louis, Illinois, to Danville, Kentucky, passing through Illinois and Indiana and part of Kentucky; that on August 1, 1913, at Princeton, Indiana, appellee accepted appellant as a passenger, to be carried safely on one of its passenger trains from Princeton, Indiana, to Danville, Kentucky; that by reason of appellee's negligence the train was thrown from the track at a point in Kentucky, and as

a consequence certain described serious, permanent physical injuries were inflicted on appellant.

To the complaint appellee filed, in addition to a general denial, such second paragraph of answer. The latter was to the following effect: That appellant is the wife of F. N. Clark, appellee's employe; that shortly prior to August 1, 1913, appellee issued to appellant at her request and the request of her said husband a certain free pass which entitled her to ride on said train free of cost or charge from Princeton, Indiana, to Danville, Kentucky; that the free pass was issued solely by reason of the fact that appellant was the wife of said employe, and for no other account or consideration whatsoever, and pursuant to the laws of the United States authorizing appellee to issue such pass on that account, and that said free pass contained as a part thereof, and plainly printed thereon, the following stipulations and conditions, to wit:

> "The person accepting this pass agrees that the Southern Railway Company shall not be liable, under any circumstances, whether of negligence of agents or otherwise, for any injury to the person or for any loss or damage to the property of the person using this pass."

It is further alleged that appellant agreed to such stipulations and conditions, and indicated such agreement by signing her name on the pass at a place provided for that purpose, and that at the time of receiving her said injuries she was traveling on said train solely by reason of such free pass.

To the second paragraph of answer appellant filed a reply in five paragraphs, of which the second and

fourth are unimportant in the consideration of any question presented. The first paragraph was a general denial. By the third paragraph appellant alleged in substance that by virtue of a certain provision of the Constitution of the Commonwealth of Kentucky, in force at all times involved here, said stipulations and conditions printed on said pass were void and unenforceable, which constitutional provision as set out in said paragraph of reply is as follows: "No common carrier shall be permitted to contract for relief from its common-law liability."

The fifth paragraph of reply was to the effect that said stipulations and conditions printed on said pass materially changed, affected and determined the value of the services rendered to a passenger traveling thereon; that appellee's printed schedule of rates, fares and charges for the transportation of freight and passengers between different points on its route, filed with the Interstate Commerce Commission as required by the laws of the United States, did not contain a statement of such stipulations and conditions, and did not disclose that passes issued to employes and to members of their families would be subject to such stipulations and conditions; that as a consequence such stipulations and conditions were void and unenforceable.

Appellee's demurrer filed to the third and fifth paragraphs of reply was overruled.

The special finding recites the facts in detail as determined by the court from the evidence, and to the following effect: That all the material allegations of the complaint, of the special answer and of the special replies are true. Among the facts so specifically found, some of which are not clearly alleged in any

pleading, are the following: That by reason of appellant's injuries, suffered through appellee's negligence as alleged, the former has been damaged in the sum of $5,000; that appellant's husband was engaged in appellee's service at Princeton, Indiana, and that the pass was issued and delivered there; that appellee's schedule of rates, fares and charges filed with the Interstate Commerce Commission and in force at the time when appellant was injured, did not contain the pass involved in this action.

The conclusions of law are in substance that appellee is not liable to appellant in damages for her said injuries, and that she is not entitled to recover in this action.

The ruling sustaining the special replies as against demurrer was made by the Gibson Circuit Court. This ruling is not challenged by cross-errors. The cause was venued to the Posey Circuit Court and there tried. It is apparent that the ruling of the Gibson Circuit Court was erroneous, if the conclusions of law were correctly stated on the facts found.

The alleged errors in overruling the demurrer to the special answer and in stating the conclusions of law will be considered together.

By the provisions of a federal statute it is declared to be unlawful for such a transportation company as appellee to issue any interstate free ticket or 1. free pass, except to certain designated classes of persons, among the exceptions being employes and their families. Subd. 5, §8563 (vol. 8) U. S. Comp. Stat. 1916; 36 U. S. Stat. at L., ch. 309, p. 544. By the terms of such statute appellee, since not prohibited, was impliedly authorized to issue an interstate free pass to appellant as a member of the family

of an employe. As to whether what purports
2. to be such a pass so issued is in fact a free pass
for gratuitous passage, rather than issued in
consideration or part consideration of services
3. performed or to be performed by such an employe, is a federal question. Under the decisions of the United States Supreme Court such a pass
is a free pass issued as a gratuity. *Charleston, etc.,
R. Co.* v. *Thompson* (1914), 234 U. S. 576, 34 Sup. Ct.
964, 58 L. Ed. 1476; *Norfolk, etc., R. Co.* v. *Chatman*
(1917), 244 U. S. 276, 37 Sup. Ct. 499, 61 L. Ed. 1131,
L. R. A. 1917F 1128.

But where a carrier of passengers voluntarily undertakes to carry a passenger gratuitously or under a
free pass, in the absence of a contract or stipu-
4. lation to the contrary, it owes him a duty to
exercise care for his safety, and a failure to
discharge such duty is negligence which may form
the basis of an action. *Indianapolis Traction, etc., Co.*
v. *Klentschy* (1907), 167 Ind. 598, 601, 79 N. E. 908,
10 Ann. Cas. 869; *Russell* v. *Pittsburgh, etc., R. Co.*
(1901), 157 Ind. 305, 312, 61 N. E. 678, 55 L. R. A.
253, 87 Am. St. 214; *Cleveland, etc., R. Co.* v. *Ketcham*
(1893), 133 Ind. 346, 350, 33 N. E. 116, 19 L. R. A. 339,
36 Am. St. 550; *Ohio, etc., R. Co.* v. *Shelby* (1874),
47 Ind. 471, 492, 17 Am. Rep. 719; *Illinois Central R.
Co.* v. *O'Keefe*, 61 Am. St. 87, note; 2 Michie, Carriers §2339; 10 C. J. 873; 4 R. C. L. 1159.

However, where a passenger is carried gratuitously, the carrier may by contract or stipulation relieve itself from liability for its negligence in the
absence of a valid, prohibiting statute. *Indianapolis
Traction, etc., Co.* v. *Klentschy, supra; Payne* v. *Terre
Haute, etc., R. Co.* (1902), 157 Ind. 616, 62 N. E. 472,

56 L. R. A. 472; *Indianapolis Traction, etc., Co.* v. *Isgrig* (1914), 181 Ind. 211, 215, 104 N. E. 60; *Malott* v. *Weston* (1912), 51 Ind. App. 572, 98 N. E. 127; *Charleston, etc., R. Co.* v. *Thompson, supra;* 5 R. C. L. 9; 10 C. J. 720.

It appears, then, *prima facie* that the court did not err in overruling the demurrer to the special answer or in stating the conclusions of law. Appellant, however, points to the facts pleaded by the special replies and found by the court to be true, and relies on such facts as sufficient to rebut or overcome such *prima facie* conclusion; that is, appellant relies on the fact that the stipulations and conditions printed on the pass were not filed by appellee with the Interstate Commerce Commission as a part of its schedule of rates, fares and charges for the transportation of passengers, and relies also on the provision of the Kentucky Constitution prohibiting common carriers from contracting for relief from common-law liability. Appellant points also to §3897 Burns 1914, §2904 R. S. 1881. By that section it is declared to be unlawful "for any officer or agent of any railroad * * * or other public conveyance of passengers for hire or reward, * * * to issue or sell any pass, ticket, * * * evidencing the holder's right to travel or be transported * * * upon such railroad * * * or other public conveyance, subject to any condition contained in or indorsed upon or appended to such pass, ticket, * * * whereby the liability of such carrier shall be abridged or limited, or whereby the rights of the holder of the pass, ticket, * * * shall be decreased or abridged, unless such condition shall be printed in nonpareil type, or in type or characters as large or larger than nonpareil type

\* 	\* 	\*.'' 	The section further provides that any person violating its provisions shall on conviction be fined not less nor more than certain named sums.

Appellant argues that by virtue of such statute such stipulations and conditions were void, and consequently that the court erred in its ruling on the demurrer to the special answer, and also 5. in stating the conclusions of law. It will be observed that the special answer does not allege that the stipulations and conditions here were printed in type conforming to such section. There is some controversy in the briefs respecting the burden of alleging the affirmative or the negative of that proposition. The finding, however, which is not challenged is to the effect that such stipulations and conditions were printed in a type smaller than nonpareil, viz., five point agate type. It is therefore evident that that question was fully tried, and we therefore regard it as before us for determination.

Appellee's response to appellant's several contentions is in substance as follows: (1) That the Interstate Commerce Act does not require that forms of free passes or stipulations incident to them be filed as a part of schedules of rates, etc. (2) That Congress, as manifested by the Interstate Commerce Act, has legislated on the subject of the interstate carriage of passengers, and also on the subject of interstate free passes and their incidents, and hence that such Indiana statute and also the provisions of the Kentucky Constitution as quoted above, in their relation to such carriage and passes, are suspended. (3) That such Indiana statute does not purport to be broader in its terms than to subject an agent to a penalty for issuing a pass in violation of its provisions; that

where a pass is so issued the statute does not make void a stipulation printed on it; that the pass as a whole, if anything, rather than the stipulation, is void. (4) That neither the pass nor the stipulation is included within the scope of the Indiana statute for the reason that appellee, in its relation to appellant as a traveler on a free pass, was neither a common carrier nor "a public conveyance of passengers for hire or reward."

Appellant's first contention, as presented by the fifth paragraph of reply, is predicated on §6 of the federal act to regulate interstate and foreign commerce, as amended by subsequent acts. §8569 U. S. Comp. Stat. 1916. That section, so far as it has a bearing here, is as follows: "Every common carrier subject to the provisions of this Act shall file with the Commission    *    *    *    and print and keep open to public inspection, schedules showing all the rates, fares and charges for transportation between different points on its own route    *    *    *. The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried    *    *    *    and shall also state separately all terminal charges    *    *    *    and    *    *    *    all privileges or facilities granted or allowed, and any rules or regulations which in any wise change, affect or determine any part or the aggregate of such aforesaid rates, fares and charges, or the value of the service rendered to the passenger, shipper or consignee."

The schedule of rates, fares and charges and the regulations filed with the Interstate Commerce Commission are binding on both carrier and shipper or passenger. *Ford* v. *Chicago, etc., R. Co.* (1913), 123

Minn. 87, 143 N. W. 249; *American Sugar Refining Co.* v. *Delaware, etc., R. Co.* (1913), 207 Fed. 733, 125 C. C. A. 251; *Boston, etc., Railroad* v. *Hooker* (1914), 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B 450, Ann. Cas. 1915D 593.

Any rule or regulation required by the act to be filed with the schedule, and which changes, affects, or determines the value of the service rendered to the passenger or shipper, is unlawful and void, if not so filed. *Baltimore, etc., R. Co.* v. *Hamburger* (1907), 155 Fed. 849.

It would therefore seem that if the situation here, involving as it does a free pass for gratuitous carriage, is embraced by the requirements of the act quoted, the stipulations and conditions indorsed on the pass, not having been filed with the Interstate Commerce Commission, are not enforceable.

The act requires that there be filed a schedule of rates, fares and charges for transportation between the respective points on the carrier's route, and that the schedule state any rules or regulations which in any wise change or affect or determine any part or the aggregate of such rates, fares and charges, or the value of the service rendered. The rates, fares and charges as filed are indicative of the apparent consideration to be paid for transportation, but if there is any rule or regulation promulgated by the carrier that modifies such apparent rate, fare, or charge, it also must be filed with or as a part of the schedule, that the real rate, etc., or the real value of the services may be disclosed.

The word "rate" as used in the Interstate Commerce Act means the net cost to the shipper; the net

amount the carrier receives and retains for tl
9.  transportation service. *United States* v. *Ch*
*cago, etc., R. Co.* (1906), 148 Fed. 646. The wor
"fare" means the rate of charge for the carriage
passengers (19 Cyc 456); money paid for a voya
or passage (Bouvier, Law Dictionary). A charge
the price fixed or demanded for services rendere
*Fulmer* v. *Southern R. Co.* (1903), 67 S. C. 262,
S. E. 196.

It is apparent that each of these words—rat
fares, charges—as used in the Interstate Commer
Act, has in it the idea of compensation for ser
10.  ices performed. A free pass, however, such
is involved in this action is otherwise. As
have said, it calls for gratuitous service voluntar
performed. *Charleston, etc., R. Co.* v. *Thomps*
*supra.* It evidences a mere privilege of transpor
tion, which a carrier cannot be compelled to gra
*Northern Pacific R. Co.* v. *Adams* (1904), 192 U.
440, 24 Sup. Ct. 408, 48 L. Ed. 513. It is a mere licer
to be carried. *Boering* v. *Chesapeake, etc., R.*
(1904); 193 U. S. 442, 24 Sup. Ct. 515, 48 L. Ed. 7
If free, it excludes every element of rate, fare,
charge. The act to regulate commerce commits
the Interstate Commerce Commission the determ
ing and prescribing of the form in which ta
8.  schedules shall be prepared and arranged.
*supra*, as amended June 29, 1906; *Norfolk,*
*R. Co.* v. *Chatman, supra.* It is neither alleged
found as a fact that any form prescribed by the c
mission requires that a schedule filed under the
should contain anything on the subject of free pas
issued to employes or members of their families
stipulations or conditions respecting their uses.

les promulgated by the commission respecting pas-
nger fare schedules, as set out in Peirce's Digest of
ecisions of the Commission, p. 705 (1908), contain
) provision with reference to free passes or.to con-
tions annexed to their use.   It is therefore our
dgment that a free pass, such as is involved in this
tion, is not included within the meaning of any of
e words "rates, fares, or charges," as used in the
mmerce Act, and consequently that the act does not
quire that a schedule of rates, fares and charges
ed thereunder contain any reference to free passes
ich a carrier is authorized to issue to employes or
embers of their families, or to any rules or regula-
ns of the carrier governing their issue or use.

There is another view that leads to the same con-
sion:  As we have said, rates, fares and charges,
en scheduled and filed as required by the Com-
rce Act, are binding on both carrier and shipper;
 both the transporter and the transported.   If the
t that a carrier contemplates the issuing of passes
employes and members of their families, as is per-
tted to be done by the provisions of the act, must
 scheduled and filed with the commission, it would
refore seem to follow that an obligation to issue ·
sses would arise on the filing of the schedule.   But
 obligation imports a consideration.   In such a
e, if there is a consideration, it consists in serv-
 performed or to be performed by the employe.
 *Charleston, etc., R. Co.* v. *Thompson, supra,* it is
ted that there is no obligation on the part of a
rier to issue free passes under the Commerce Act.
eading of the act plainly discloses the accuracy of
 statement.   In that case it is doubted also whether
h a carrier can obligate itself to issue a pass to

an employe or to a member of his family in consideration of services, as to do so would constitute discrimination in violation of the act; it would amount to "a greater or less or different compensation for transportation of passengers from that in its published rates." Moreover, it is held that an agreement by an interstate carrier made in consideration of the grant of right of way, prior to the enactment of the act of June 29, 1906 (34 Stat. at L. §3591, p. 584), to issue a pass annually during the life of the grantor, though valid when made, was rendered unenforceable by §6 of that act, which prohibits the demanding, collecting, or receiving of a greater or less or different compensation for transporting persons or property than that specified in the published schedule of rates. *Louisville, etc., R. Co.* v. *Mottley* (1911), 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671.

For purposes of the question here, §6 of that act is equivalent to §8569 U. S. Comp. Stat. 1916, *supra.* It is held, also, in that case that the scheduled rates are payable only in money, which excludes a pass free in fact as well as in name. Being a mere gratuity, it is not payable in money, and hence not within the scope of a schedule and therefore neither a rate, a charge, nor a fare.

It will be observed that a later case distinguishes a pass issued to a drover or caretaker of a shipment from a pass issued to an employe or member of his family under the act, holding that the former is not gratuitous but based on a valuable consideration, viz., a cash amount estimated on the schedule rate for the carriage of the shipment, which amount includes also the consideration for the transportation of the drover or caretaker. *Norfolk, etc., R. Co.* v. *Chatman, supra.*

Among the objects back of the Commerce Act is to secure just rates and to prevent unjust discrimination. *Interstate Commerce Comm.* v. *Chicago, etc., R. Co.* (1905), 141 Fed. 1003; id., 209 U. S. 108, 28 Sup. Ct. 493, 52 L. Ed. 705. As we have said, a carrier is not required by the act to issue a pass such as is involved here. It is purely optional. A carrier may issue a pass to one employe and deny it to another; or may issue it on one occasion and refuse to do so on another occasion; or issue it good for carriage to one point and decline to do so to another point. If then a free pass issued to an employe or member of his family is a rate, charge, or fare that must be scheduled, the act permits discrimination and inequality of treatment in administering the schedule, while enacted to prevent such result. We therefore conclude that free passes issued to employes and members of their families are not included by the terms "rates, fares and charges" as used in the act.

Assuming for the present that the Indiana statute and the provision of the Kentucky Constitution, as above quoted, are applicable here unless suspended by congressional legislation, we proceed to the latter question.

It is not denied that the subject-matter of such statute and constitutional provision belongs to that class respecting which a state may legislate unless and until Congress legislates. In such a field the power of the states is superseded when the power of Congress has been exercised. *Southern R. Co.* v. *Reid* (1912), 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257.

In order that congressional legislation may suspend state legislation, the former must be specific, and

must cover the subject-matter which the latter a
tempts to regulate. *Southern R. Co.* v. *Reid, supr*
"In the application of this principle of the suprer
acy of an act of Congress in a case where the sta
law is but the exercise of a reserved power, the r
pugnance or conflict should be direct and positive,
that the two acts could not be reconciled or consis
ently stand together." *Sinnot* v. *Davenport* (1859
22 How. 227, 16 L. Ed. 243; *Missouri, etc., R. Co.*
*Harris* (1914), 234 U. S. 412, 34 Sup. Ct. 790, 58 L. E
1377, L. R. A. 1915E 942.

The provisions under consideration are grounde
upon the police power, respecting which the follov
ing is said: "It is true that the police power cann
be legitimately exercised by a state so as substa
tially to prohibit or unnecessarily burden either fo
eign or interstate commerce, but the interference,
any, in the exercise thereof, with the commerci
power of the federal government, in order to be u
lawful, must be direct, and not the mere incident
effect of the enforcement of such power by the state.
*Pittsburgh, etc., R. Co.* v. *State* (1909), 172 Ind. 14
87 N. E. 1034; affirmed in 223 U. S. 713, 32 Sup. C
520, 56 L. Ed. 626.

"To have the effect of superseding a state statu
it is not sufficient that a congressional regulation
commerce invades the same field; it must express
cover the precise subject-matter or show a purpo
to take legislative possession of the whole field.
C. J. 18, and cases.

*Solan* v. *Chicago, etc., R. Co.* (1895), 95 Iowa 26
63 N. W. 692, 28 L. R. A. 718, 58 Am. St. 430, is a
plicable on the proposition that such a provision as
contained in the Indiana statute or Kentucky Const

tion now under consideration is not inconsistent with the facts that the power to regulate interstate commerce rests exclusively with Congress. That case involved a transaction that occurred prior to the amendment to the Commerce Act of June 29, 1906, commonly designated as the Hepburn Act (34 Stat. at L. 584, ch. 3591, *supra*). There Solan, the plaintiff, while traveling in a caboose attached to a freight train, and while in charge of several carloads of cattle being transported in such train from a point in Iowa to a point in Illinois, received certain injuries within the former state through the negligence of the carrier. The contract under which Solan was being transported limited the carrier's liability to $500 for any injuries that he might receive while being so carried. There was in force in Iowa at the time a statute prohibiting any corporation engaged in transporting persons or property by railway from limiting its liability by contract. The trial court applying such statute in effect charged the jury that those provisions of the contract of carriage by which the carrier attempted to limit its liability were void. The Iowa Supreme Court on appeal, affirming the judgment of the trial court for a sum larger than that fixed by the limiting contract, cited authorities to the effect that the restriction contained in such statute was enacted by the state in the exercise of its police power, and that such restriction was in no sense a regulation of interstate commerce, respecting which only Congress may legislate, and that the contract was within not only the prohibition of the statute, but also of the common-law rule that declares such a contract void as against public policy, and then said: "In our opinion, neither the

common-law rule nor the statute to which we have referred is, as applied to this contract, in any proper sense an attempt to regulate commerce." This case was affirmed on appeal to the United States Supreme Court (*Chicago, etc., R. Co.* v. *Solan* [1898], 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688), the court there saying in effect that in such cases the law to be applied is the law of the state and that it is in the law of the state in such cases that provisions are to be found concerning the rights and duties of common carriers of persons and the measures by which injuries resulting from their failure to perform their obligations may be prevented or redressed; that persons traveling in interstate trains are as much entitled while within a state to the protection of that state as those who travel on domestic trains, and that a carrier exercising his calling within a particular state, although engaged in the business of interstate commerce, is answerable according to the law of that state; that it is within the power of the state to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs which after infliction the state has the power to redress; and discussing specifically that such a statute does not infringe upon the exclusive legislative domain of Congress, the court saying respecting such statute: "It is in no just sense a regulation of commerce. It does not undertake to impose any tax upon the company, or to restrict the persons or things to be carried, or to regulate the rate of tolls, fares or freight. Its whole object and effect are to make it more sure that railroad companies shall perform the duty, resting upon them by virtue of their employment as common carriers, to use the utmost care and

diligence in the transportation of passengers and goods.''

In measuring the effect of the Solan case, *supra,* it should be remembered that, at least up to the time of the occurrence involved there, Congress had not legislated on the subject of the liability of a carrier in case of an injury to an interstate passenger.

Aside from the effect of the Carmack Amendment to the Hepburn Act hereinafter analyzed, *Adams Express Co.* v. *Croninger* (1913), 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, in which is discussed a transaction that occurred after such amendment became effective, is to the same effect as the foregoing cases. The Croninger case involved a shipment by express from a point in Ohio to a point in Georgia under a carrying contract by the terms of which the rate charged was based upon a valuation much less than the real value of the article carried, and limiting the liability of the carrier in case of loss to the stated value. The article not having been delivered to the consignee, suit was brought in a Kentucky court to recover the full value of the shipment, the plaintiff taking the position that the stipulation of the shipping contract limiting liability was void under the provision of the Kentucky Constitution that is involved here, viz.: ''No common carrier shall be permitted to contract for relief from its common-law liability.'' See *Adams Express Co.* v. *Walker* (1904), 119 Ky. 121, 83 S. W. 106, 67 L. R. A. 412, cited in the Croninger case. The Kentucky court, applying such provision of the Kentucky Constitution, held the shipping contract void under such provision in so far as liability was thereby limited, and rendered judgment in favor of the plaintiff for the

full value of the article shipped. The case reached the United States Supreme Court in due course, and is reported as above indicated. The federal Supreme Court states in the opinion that the question to be determined is whether the operation and effect of such a contract of shipment "is governed by the local law of the state or by the acts of Congress regulating interstate commerce"; and that the constitutional power of Congress to regulate commerce among the states "comprehends power to regulate contracts between the shipper and the carrier of an interstate shipment by defining the liability of the carrier for loss, delay, injury or damage to such property." The court further says that: "It is equally well settled that until Congress has legislated upon the subject, the liability of such a carrier, exercising its calling within a particular state, although engaged in the business of interstate commerce, for loss or damage to such property, may be regulated by the law of the state. Such regulations would fall within the large class of regulations which it is competent for a state to make in the absence of legislation by Congress, growing out of the territorial jurisdiction of the state over such carriers and its duty and power to safeguard the general public against acts of misfeasance and nonfeasance committed within its limits, although interstate commerce may be indirectly affected." The court then cites and quotes from the Solan case, *supra,* and others of a like nature, and then proceeds: "In view of the decisions of this court in the two cases last referred to, we shall assume that this case is governed by them, unless the subsequent legislation of Congress is such as to indicate a purpose to bring contracts for interstate shipments under one uniform rule of law not

subject to the varying policies and legislation of particular states." The court then proceeds to discuss the Carmack Amendment, *post,* and in holding that it, rather than such provision of the Kentucky Constitution, is applicable, and that the latter is suspended by the former in its relation to such a shipment, says: "That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the state upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist." See, also, *Atchison, etc., R. Co.* v. *Robinson* (1914), 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901, and also the following, involving the carriage of personal baggage: *Boston, etc., Railroad* v. *Hooker, supra; Louisville, etc., R. Co.* v. *Miller* (1914), 156 Ky. 677, 162 S. W. 73, 50 L. R. A. (N. S.) 819.

The Carmack Amendment to the Hepburn Act as enacted June 29, 1906 (34 Stat. at L. §3959, p. 595, §§8604a, 8604aa U. S. Comp. Stat. 1916), is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state

shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

The provision of the Carmack Amendment, *supra,* preserving remedies and rights of action under existing law has reference to rights and remedies 12. under federal, rather than state, law. *Adams Express Co.* v. *Croninger, supra; Texas, etc., R. Co.* v. *Abilene Cotton Oil Co.* (1907), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; *Chicago, etc., R. Co.* v. *Latta* (1913), 226 U. S. 519, 33 Sup. Ct. 155, 57 L. Ed. 328.

An inspection of the Carmack Amendment, *supra,* discloses that it is silent respecting the carriage of persons; it contains no provisions relative to 13. duties and liabilities growing out of the relation of carrier and passenger. It deals only

with the transportation of property. Guided by principles announced and authorities cited above, we therefore conclude that the Carmack Amendment did not suspend the operation of either the Indiana statute or the provision of the Kentucky Constitution as quoted herein, in their relation to interstate passenger traffic.

We have referred above to a federal statute regulating the issuing of free passes. That statute reads in part as follows: "No common carrier subject to the provisions of this Act shall, after January first, nineteen hundred and seven, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employes and their families" and certain other classes of persons. Subd. 5, §8563 U. S. Comp. Stat. 1916, *supra;* 36 U. S. Stat. at L. ch. 309, §7, p. 546; 34 Stat. at L. ch. 3591, p. 584. Pointing to this statute, appellee argues that thereby Congress has taken over the general subject-matter of interstate free passes with all their incidents; hence that authority does not remain in the states to enforce any regulation, statutory or otherwise, affecting such a pass; that as a consequence both the Indiana statute and the provisions of the Kentucky Constitution, as above outlined, in their relation to a free pass issued for interstate transportation, are suspended. Appellee cites *Charleston, etc., R. Co.* v. *Thompson, supra.* In that case appellee, while traveling on a free pass from a point in one state to a point in another state, was injured through the negligence of the appellant. The pass was issued to her under the Hepburn Act, above set out, as the wife of an employe. The pass, as here, contained a stipulation exempting the car-

rier from liability.   The Court of Appeals of Georgia, before which the cause came on appeal from the trial court, recognized that such an exemption is valid as against a free pass issued for gratuitous passage, but held that such a pass issued to a member of the family of an employe under the Hepburn Act is not in fact free; that it is issued in consideration of services performed or to be performed by the employe, and that, the pass being supported by a valuable consideration, the exemption was void.  *Charleston, etc., R. Co.* v. *Thompson* (1913), 13 Ga. App. 541, 79 S. E. 242.  The cause reached the federal Supreme Court on a writ of error, and while that court recognized as sound the principle announced by the state court that such an exemption is valid only as against a free pass, the question actually considered and decided was that such a pass issued under the Hepburn Act is in fact free.  As that question involved the construction of a United States statute, it was a federal question.  By reason of that question the federal Supreme Court assumed jurisdiction.  That case does not hold that Congress by the Hepburn Act, *supra,* has entered the legislative field of free passes to the extent that all state regulations bearing on that subject are suspended.

The general purpose back of the Hepburn Act, *supra,* is, as we have said, the establishing of equality in rates, fares and charges for the transportation of persons and property, and the preventing of unfair discrimination.  Formerly public carriers might, and actually did, issue free passes at pleasure.  Through such an instrumentality it was possible for them to accomplish the opposite of the purposes of the Hepburn Act.  The section now under consideration is in

harmony with the general spirit of the act. It specifies the classes to whom free passes may be issued. The nature of the specified classes is such that unfair discrimination is not likely to result from the issuing of passes to them. The subject-matter of the section is merely to whom free passes may issue. It contains no provision respecting the rights of the carried or the liabilities of the carrier under such a pass, or what stipulations or conditions may lawfully be promulgated or specified respecting the use of passes so issued, or how such stipulations or conditions must be brought to the attention of the carried, if at all. We do not believe that the Hepburn Act in any of its provisions suspends the operation of either the Indiana statute or the section of the Kentucky Constitution above set out as relating to passenger traffic. When Congress legislates merely respecting a certain element of a general subject, the field is not thereby invaded so as to suspend state legislation or state law dealing with other elements of the general subject and not inconsistent with the federal legislation. Thus in *Minneapolis, etc., R. Co.* v. *Popplar* (1915), 237 U. S. 369, 35 Sup. Ct. 609, 59 L. Ed. 1000, the court deals with an action involving the federal Safety Appliance Act (27 Stat. at L. 531 and 32 Stat. at L. 943), respecting which the court said: "The action fell within the familiar category of cases involving the duty of a master to his servant. This duty is defined by the common law, except as it may be modified by legislation. The federal statute, in the present case, touched the duty of the master at a single point and, save as provided in the statute, the right of the plaintiff to recover was left to be determined by the law of the state."

Congress not having legislated on the subject of the rights and liabilities of the parties in case of the interstate carriage of passengers under free passes issued under the Hepburn Act, *supra,* or otherwise, or respecting the validity of stipulations or conditions annexed to such passes, exempting the carrier from liability, these questions may be determined from a consideration of state enactments or constitutional provisions. In addition to authorities already cited, see the following: *Southern Pacific Co.* v. *Schuyler* (1913), 227 U. S. 601, 33 Sup. Ct. 277, 57 L. Ed. 662, 43 L. R. A. (N. S.) 901; *Northern Pacific R. Co.* v. *Adams, supra; Pennsylvania R. Co.* v. *Hughes* (1903), 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268; *Cleveland, etc., R. Co.* v. *Illinois* (1900), 177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868; *Michigan Central R. Co.* v. *Vreeland* (1913), 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C 176; *Ford* v. *Chicago, etc., R. Co., supra; Rose* v. *Des Moines Valley R. Co.* (1874), 39 Iowa 246; *Vandalia R. Co.* v. *Public Service Comm., etc.* (1916), 242 U. S. 255, 37 Sup. Ct. 93, 61 L. Ed. 276; *Chicago, etc., R. Co.* v. *Solan, supra; McCann* v. *Eddy* (1896), 133 Mo. 59, 33 S. W. 71, 35 L. R. A. 110, affirmed in 43 L. Ed. 1093; *Skipper* v. *Seaboard, etc., Railway* (1906), 75 S. C. 276, 55 S. E. 454, 7 L. R. A. (N. S.) 388, 117 Am. St. 901, 9 Ann. Cas. 808, and note; *Ohio, etc., R. Co.* v. *Tabor* (1895), 98 Ky. 503, 32 S. W. 168, 36 S. W. 18, 34 L. R. A. 685, and cases reviewed in opinion on petition for rehearing; *Western Union Tel. Co.* v. *Eubanks & Russell* (1897), 100 Ky. 591, 38 S. W. 1068, 36 L. R. A. 711, 66 Am. St. 361; *Davis* v. *Western Union Tel. Co.* (1900), 107 Ky. 527, 54 S. W. 849, 92 Am. St. 371; *Postal Tel. Cable Co.* v. *Schaefer* (1901), 110 Ky. 907,

62 S. W. 1119; *Martin* v. *Pittsburg, etc., R. Co.* (1906), 203 U. S. 284, 27 Sup. Ct. 100, 51 L. Ed. 184, 8 Ann. Cas. 87; *St. Joseph, etc., R. Co.* v. *Palmer* (1893), 38 Neb. 463, 56 N. W. 957, 22 L. R. A. 335; 5 R. C. L. 726. The Kentucky cases above cited are based on the constitutional provision involved here.

When an action is brought in one jurisdiction to recover for a personal injury inflicted by a tortuous act committed in another jurisdiction, all matters relating to the right of action are governed by the law of the place where the act was committed and the injury suffered. In any such case all defenses available under such law, if properly brought to the attention of the court, will likewise be recognized and enforced, unless against the policy of the law of the former. *Baltimore, etc., R. Co.* v. *Reed* (1902), 158 Ind. 25, 62 N. E. 488, 56 L. R. A. 468, 92 Am. St. 293; *Cuba R. Co.* v. *Crosby* (1912), 222 U. S. 473, 32 Sup. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40; 5 R. C. L. 1036; 12 C. J. 452, 455.

It follows that the question whether under the facts a cause of action arose in favor of appellant must be determined by the law of the commonwealth of Kentucky. The elements that determine the question of the existence of a cause of action here are: First, the facts alleged in the complaint conceded to be at common law; second, the facts alleged in the second paragraph of answer respecting the pass with its stipulations and conditions; third, the facts alleged in the third paragraph of reply respecting the provisions of §196 of the Kentucky Constitution. As we have said, all these facts were specifically found by the court to be true. Unless and

except it appears otherwise by allegation and proof, the common law is presumed to be in force in Kentucky. *Penn Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379, 72 N. E. 132.

It is conceded here that the facts alleged in the complaint and found by the court to be true are sufficient to constitute a *prima facie* cause of action at common law, and consequently under the law as it is presumed to be in force and applied in Kentucky. As we have said, the question whether the pass involved here was a free pass is a federal question, and that by the decisions of the federal Supreme Court it was a free pass both in name and by nature. We have determined above that at common law, and therefore presumably under the law in force in Kentucky, actionable negligence may arise out of the manner in which an undertaking to carry a passenger gratuitously is discharged, in the absence of a contract to the contrary, and that a stipulation against the consequences of such negligence, in such a case, is valid. It results that, unless the stipulations and conditions printed on the pass here are governed by the Indiana statute and are invalid under that statute, the facts found by the court under the special answer are sufficient to defeat appellant's *prima facie* case based on facts found under the complaint, except it be that the force of the Kentucky constitutional provision above quoted presents such a consequence.

Such provision is as follows: "No common carrier shall be permitted to contract for relief from its common-law liability." We have above indicated that at common law, in the absence of a contract to the contrary, a common carrier is liable for the consequence of its negligence even in case of the gratuitous car-

riage of a passenger. It follows that if appellee is not liable here it is by reason of the stipulations and conditions indorsed on the pass. But it would seem that such stipulations and conditions are plainly within the prohibition of the Kentucky Constitution. It results that as applied to a transaction occurring in Kentucky, they are void. *Ohio, etc., R. Co.* v. *Tabor, supra; Western Union Tel. Co.* v. *Eubanks & Russell, supra; Davis* v. *Western Union Tel. Co., supra; Postal Tel. Cable Co.* v. *Schaefer, supra.*

But it is argued that in the transaction here appellee was a mere private carrier rather than a common carrier for hire, and that the Kentucky constitutional provision does not purport to apply where the carriage of a passenger is gratuitous. We do not find it necessary to determine appellee's exact nature in its relation to the transaction here. The language of the provision would seem to be broad enough to cover it. The prohibition is that no common carrier shall be permitted, etc., rather than that no common carrier as such, or while acting as such, shall be permitted, etc. Appellee has not brought to our attention any decision of the Court of Appeals of Kentucky construing such provision as now contended. If there are such decisions and they were properly brought to our attention, the principle of comity would require us to follow them. *Supreme Council, etc.* v. *Logsdon* (1915), 183 Ind. 183, 190, 108 N. E. 587; *Travelers Protective Assn.* v. *Smith* (1915), 183 Ind. 59, 107 N. E. 283, Ann. Cas. 1917E 1088.

While the inhibition of the provision embraces other fields of activity than the carriage of passengers, yet in such field there is reason for applying it

where the carriage is gratuitous. Thus independent of statutory or constitutional provision, and prior to the adopting of the Kentucky Constitution containing such prohibition, it was almost universally held in this country that in case of the carriage of passengers for hire, a carrier might not contract for exemption from liability for negligence. That doctrine still prevails. 5 R. C. L. 8, and cases; 10 C. J. 714, and cases.

Such seems to have been the holding of the courts of appellate jurisdiction in Kentucky, at least as to the carriage of goods for hire, prior to the adoption of the present Constitution, and at a time when the Constitution of that state did not contain a like provision. See *Louisville, etc., R. Co.* v. *Brownlee* (1879), 14 Bush (Ky.) 590; *Orndorff & Co.* v. *Adams Express Co.* (1867), 3 Bush (Ky.) 194, 96 Am. Dec. 207. The present Constitution of Kentucky was adopted in 1891. It would therefore seem that in its relation to a gratuitous carriage necessity existed for a constitutional provision applicable to such a case as here, if at all, rather than to a case of carriage for hire. Like provisions are construed as applying to a gratuitous carriage. *Walther* v. *Southern Pacific Co.* (1911), 159 Cal. 769, 119 Pac. 51, 37 L. R. A. (N. S.) 235; *Rose* v. *Des Moines Valley R. Co., supra;* 5 R. C. L. 10; 10 C. J. 720.

We proceed to determine what force, if any, must be given to the Indiana statute, the material part of which is above set out. §3897 Burns 1914, 19. *supra.* As we have said, the court found that the stipulations and conditions indorsed on the pass and which in terms purported to exempt appellee from liability, appeared in a type smaller than as

required by the statute. Appellant, however, accepted
the pass, signed her name thereon to a statement
printed on the pass, and in effect that she thereby
subscribed to and accepted such exemption conditions,
and she thereupon proceeded to avail herself of the
pass by using it as evidence of her right to be carried.
It seems to be plain that if such statute is applicable
appellee's agent in issuing the pass with such condi-
tions appearing in the smaller type thereby violated
a penal statute of this state. The stipulations and
conditions, having been signed and accepted by appel-
lant thereby assumed the form of a contract to which
she and appellee were parties. One question to be
determined is whether appellee may avail itself of
the relation thus arising as a contractual relation to
defeat appellant's cause of action. The courts in dis-
cussing the validity of exemption conditions annexed·
to free passes in the absence of a regulating statute
sometimes say in substance that the carried is not
bound to accept such a pass; that he is free to refuse
it and pay full fare and claim all the rights and privi-
leges incident to the relation thereby created; that if
he elects to accept the pass he may not repudiate
its conditions. *Northern Pacific R. Co.* v. *Adams,
supra; Payne* v. *Terre Haute, etc., R. Co., supra.* If
the tendering of a free pass puts a prospective pas-
senger to his election whether he will accept it, fair-
ness to him requires that he have a reasonable oppor-
tunity, in making his election, to be informed in fact
as well as in theory respecting conditions annexed to
it. Hence the possible theory of the Indiana statute
in its relation not only to tickets but also to passes.

It seems to be a rule of general application that a
court of law will not, as between the parties, carry

into effect a contract founded on a breach of the law. *Winchester Electric Light Co.* v. *Veal* (1896), 145 Ind. 506, 41 N. E. 334, 44 N. E. 353; *Siter* v. *Sheets* (1855), 7 Ind. 132; *Cheney* v. *Unroe* (1906), 166 Ind. 550, 77 N. E. 1041, 117 Am. St. 391; *Levison* v. *Boas,* 12 L. R. A. (N. S.) 575, note.

On the question whether the validity of such exemption stipulation must be determined in the light of said statute, the following facts are pertinent: The pass was issued and accepted in Indiana, to the wife of an employe domiciled there, to be used and actually used in Indiana and Kentucky in one continuous trip. The injury was inflicted in Kentucky by an act of negligence committed there. Appellant in an Indiana court seeks to avail itself of such stipulation printed on a pass issued by its agent in violation of an Indiana penal statute.

We are concerned here, not with the construction of such exemption stipulation, but rather with its validity.

We shall assume for the present that the exemption stipulation related to carriage in Indiana and also in Kentucky as distinct propositions. On that assumption the stipulation was severable in nature, and, as the accident occurred in Kentucky, the exemption arrangement is important here only in its relation to carriage in that state. On that assumption, then, the exemption considered as a contract was tendered and accepted, that is executed, in one state to be performed in another. In such a case the federal Supreme Court has deduced and announced the following rules governing contracts: "Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the

place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought." *Scudder* v. *Union Nat. Bank* (1875), 91 U. S. 406, 23 L. Ed. 245.

That such rules have been widely adopted and applied, see cases collected in 5 R. C. L. 936. The Supreme Court of this state in *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 74 N. E. 523, 69 L. R. A. 870, 108 Am. St. 324, while recognizing the perplexities of the involved problem, and the divergent views expressed by the courts and text-writers, has adopted such rules with modifications and amplifications as follows: "A contract must be construed and its validity determined under the laws of the state where it is executed, unless it can be fairly said that the parties at the time of its execution clearly manifested an intention that it should be governed by the laws of another state. * * * If a contract is valid in the state where it is executed, it is valid everywhere."

The Court of Appeals of Kentucky in considering a contract for an interstate shipment executed in Kentucky, and containing certain exemption features which violated the constitutional provision of that state involved here, said: "It seems clear to us that the contract relied upon by appellant is in violation of section 196 of the Constitution, *supra*, and, therefore, void where the contract was made, and, being void in this state, it is void everywhere." *Ohio, etc., R. Co.* v. *Tabor, supra.* See, also, to the same effect, *Western Union Tel. Co.* v. *Eubanks & Russell, supra;*

*Hughes* v. *Pennsylvania R. Co.*, 63 L. R. A. 529, note; 13 C. J. 253, 255; 5 R. C. L. 909, 911, and cases.

It seems, however, to be the prevailing rule that, in case of a contract for a continuous interstate carriage to be partly performed in the state where the contract is executed, such a contract is regarded as entire and indivisible and governed by the law of the place where executed. Thus in *McDaniel* v. *Chicago, etc., R. Co.* (1868), 24 Iowa 412, 416, Chief Justice Dillon presiding, the court in considering a contract for interstate shipment executed in Iowa in violation of a statute of that state, said: "No question is made, but that under the operation of this statute the special contract in this case would be void, so that the rights and liabilities of the parties would be measured by the common law as applicable to common carriers. But it is claimed by appellant's counsel, that the contract, though made in Iowa, was to be, by its terms, wholly performed in Illinois; and that the law of the place where the contract is to be performed must govern in determining its validity and effect. The general rule is, that, in conformity to the presumed intention of the parties, the contract, as to its validity, nature, obligation and interpretation, is to be governed by the law of the place of performance. Story's Conflict of Laws, §280. But it is also a general rule, that, if the contract is void or illegal by the law of the place where it is made, it is held void and illegal everywhere. Story's Conflict of Laws, §243, and authorities cited. In this case, however, it is unnecessary to rest the decision upon any general rule, for, by the express terms, as well as by the necessary implication, of the contract, it was to be partly performed in Iowa. The cattle were

received at Clinton, Iowa, 'to be delivered at Chicago, Ill.;' to do this, it was necessary to transport them some distance, more or less in Iowa, before they could reach Illinois. The contract being entire and indivisible, made in Iowa, and to be partly performed here, it must, as to its validity, nature, obligation and interpretation be governed by our law. And by our law, so far as it seeks to change the common law, it is wholly negatory and inoperative. The rights of the parties, then, are to be determined under the common law, the same as if no such contract had been made." See, also, *Liverpool, etc., Steam Co.* v. *Phenix Ins. Co.* (1889), 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788, 797, and cases collected in note to *Hughes* v. *Pennsylvania R. Co., supra,* 63 L. R. A. 517.

The proposition here is that there be enforced in the courts of this state a contract made in violation of one of its penal statutes. There is more reason why a court should refuse to enforce a contract under such circumstances than where the proposition is to enforce in the courts of this state a contract executed in another state but which contravenes the fixed public policy of this state as manifested by its legislative enactments or otherwise. On this latter proposition the Supreme Court of this state, speaking by Chief Justice Spencer, in *Vandalia R. Co.* v. *Kelley* (1918), 187 Ind. 323, 119 N. E. 257, said: "The rule of comity does not require the enforcement of a contract entered into in another state when it is in violation of a positive legislative enactment which is declarative of the public policy of the forum." In addition to authorities there cited, see, also, 5 R. C. L. 911, 912, and 13 C. J. 255, and cases. We do not find it necessary to determine specifically

the sufficiency of the special answer. For reasons appearing in the opinion the judgment is reversed with instructions to the trial court to state conclusions of law in favor of appellant on the finding, and in harmony with this opinion.